IN THE UNITED STATES DISTRICT COURT FOR THE
EASTERN DISTRICT OF VIRGINIA
ALEXANDRIA DIVISION

ROBERT HALL, SR., *et al.*,⁣      )
                                       )
    Plaintiffs,               )
                                       )
       v.                  )    Case No.: 1:16-cv-00173 (GBL)
                                       )
TRAVELERS CASUALTY INSURANCE    )
COMPANY OF AMERICA, *et al.*,      )
                                       )
    Defendants.            )

## MEMORANDUM OPINION AND ORDER

THIS MATTER is before the Court on Plaintiff Robert Hall's Motion for Summary Judgment (Dkt. No. 47), and Defendant Travelers Property Casualty Company of America ("Travelers")'s Motion for Summary Judgment (Dkt. No. 48).[1] This case concerns Plaintiff's Complaint for Declaratory Judgment to establish the limit of commercial automobile insurance to the extent a third-party tortfeasor is deemed underinsured.

The issue before the Court is whether the Travelers' insurance policy entitles Plaintiff to underinsured motorist coverage under the Virginia or Maryland limit, which turns on what state the vehicle involved in a collision was "principally garaged." The Court holds that Plaintiff is entitled to up to $2,000,000 in underinsured motorist coverage under the Virginia limit because the vehicle was principally garaged in Virginia while covered under the policy.

Accordingly, the Court GRANTS Plaintiff's Motion for Summary Judgment and DENIES Defendant's Motion for Summary Judgment.

---

[1] Plaintiff named Travelers Casualty Insurance Company of America as the defendant, but the correct name is Travelers *Property* Casualty Company of America. (*See* Notice of Removal at 1, Dkt. No. 1.)

## I. BACKGROUND

On May 15, 2014, Plaintiff was injured in an automobile accident. (Stip. ¶ 1, Dkt. No. 42.) Plaintiff brought a negligence action in Fairfax Circuit Court styled as *Hall v. El-Ibrahimy*, No. CL 2015-02384 (the "Ibrahimy Lawsuit"). (Stip. ¶ 2.) The defendant in the Ibrahimy Lawsuit has automobile insurance coverage with bodily injury limits of $25,000. (Stip. ¶ 15.) Although the Ibrahimy Lawsuit is not scheduled for trial until November 2016, the parties expect that Plaintiff's damages will exceed $25,000. (Stip. ¶ 15.) At the time of the accident, Plaintiff was employed by WP Company, LLC ("WP Company"), which publishes *The Washington Post*. (Stip. ¶ 3.) In the course of his employment with WP Company, Plaintiff was driving a tractor truck (the "Truck") owned by Penske Truck Leasing Company, L.P. ("Penske"). (Stip. ¶¶ 4–5.)

Travelers issued to Nash Holdings, LLC a commercial insurance policy effective from October 1, 2013 to October 1, 2014 (the "Policy"). (Stip. ¶ 12.) WP Company is a subsidiary of Nash Holdings, LLC, and as a WP Company employee, Plaintiff was an "insured" under the Policy at the time of the accident. (Stip. ¶ 13.) The Policy contains separate uninsured ("UM") and underinsured ("UIM") endorsements for several states with varying coverage of up to $2,000,000. (*See* Def.'s Opp'n at 8, Dkt. No. 55; Pl.'s Opp'n at 8, Dkt. No. 57.) According to the Policy, "The LIMIT OF INSURANCE for the coverages shown below is the LIMIT OF INSURANCE shown for the State where a covered 'auto' is principally garaged." (Stip. ¶ 16.) Both parties agree that the Policy does not define "principally garaged." (*See* Def.'s Br. 12–14; Pl.'s Br. at 16.) The Policy provides that the limit for Virginia is $2,000,000, whereas the limit for Maryland is $75,000. (Stip. ¶ 16.) The applicable coverage is for "Owned 'Autos' Only," and a "Leased Auto" is considered the same as an "auto" owned by the named insured. (Policy at 40, 69, Dkt. No. 42-4.)

WP Company and Penske were parties to a lease agreement under which Penske leased various tractor trucks to WP Company for use in WP Company's regular business operations. (Stip. ¶ 7.) As part of the lease agreement, if one of the leased trucks was temporarily unavailable due to maintenance or repair, Penske provided a substitute vehicle to WP Company during the period of unavailability. (Stip. ¶ 8.) Penske provided the Truck to WP Company on May 14, 2014 as a substitute due to the temporary unavailability of a vehicle being serviced (*i.e.*, Unit #574863). (Stip. ¶ 8.) WP Company took possession of the Truck at a Penske rental facility located in Virginia. (Stip. ¶ 10.) WP Company also garaged its leased trucks at its facility in Virginia. (Stip. ¶ 11.) Thus, both the Truck and the insured vehicle being serviced were garaged in Virginia.

The Truck was a "covered" auto under the Policy at the time of the accident. (Stip. ¶ 14.) The Truck was *not* a "covered" auto outside the three-day rental period between May 14, 2014 and May 16, 2014. (Stip. ¶ 14.) From approximately April 17, 2013 through June 30, 2014, including the date of the accident, the Truck was titled and registered in Maryland and had a Maryland license plate. (Stip. ¶ 6.) Plaintiff "stipulate[d] that, if the period of time from June 2013 through the date of the Accident is the relevant period of time, the Truck was 'principally garaged' at Penske's Capitol Heights, Maryland facility during that time." (Stip. ¶ 18.)

On January 8, 2016, Plaintiff filed a Complaint for Declaratory Judgment pursuant to Va. Code § 8.01-184. Travelers removed this action based on diversity jurisdiction. On August 1, 2016, the parties filed the Motions for Summary Judgment now before the Court.

## II. DISCUSSION

### A. Standard of Review

Under Federal Rule of Civil Procedure 56, the Court must grant summary judgment "if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a). In reviewing a motion for summary judgment, the Court views the facts in a light most favorable to the non-moving party. *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 255 (1986); *Askew v. HRFC, LLC*, 810 F.3d 263, 266 (4th Cir. 2016).

Once a motion for summary judgment is properly made and supported, the opposing party has the burden of showing that a genuine dispute exists. *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 586–87 (1986); *Dash v. Mayweather*, 731 F.3d 303, 311 (4th Cir. 2013). "[T]he mere existence of *some* alleged factual dispute between the parties will not defeat an otherwise properly supported motion for summary judgment; the requirement is that there be no *genuine* issue of *material* fact." *Anderson*, 477 U.S. at 247–48. A fact is "material" if it "might affect the outcome of the suit under the governing law." *Id.*; *Libertarian Party of Va. v. Judd*, 718 F.3d 308, 313 (4th Cir. 2013) (citations omitted). A dispute is "genuine" if "a reasonable jury could return a verdict for the nonmoving party." *Libertarian Party of Va.*, 718 F.3d at 313 (citation omitted).

Because the parties filed cross-motions for summary judgment, the Court considers "each motion separately on its own merits to determine whether either of the parties deserves judgment as a matter of law." *Defs. of Wildlife v. N. Carolina Dep't of Transp.*, 762 F.3d 374, 392–93 (4th Cir. 2014) (citation and internal quotation marks omitted).

**B. Choice of Law**

In this diversity action, the Court must apply Virginia's choice-of-law rules because Virginia is the jurisdiction in which this Court sits. *See Klaxon Co. v. Stentor Elec. Mfg. Co.*, 313 U.S. 487, 496 (1941); *Seabulk Offshore, Ltd. v. Am. Home Assur. Co.*, 377 F.3d 408, 418 (4th Cir. 2004). "Questions concerning the validity, effect, and interpretation of a contract are resolved according to the law of the state where the contract was made." *Seabulk*, 377 F.3d at 419. "Under Virginia law, a contract is made when the last act to complete it is performed, and in the context of an insurance policy, the last act is the delivery of the policy to the insured." *Id.* (citations omitted). Here, Virginia's choice-of-law rules lead to the application of District of Columbia substantive law because the District is where the Policy was delivered. (*See* Pl.'s Br. at 12; Def.'s Br. at 9. [2])

When a case involves solely state-law matters, the Court's "role is to apply the governing state law, or, if necessary, predict how the state's highest court would rule on an unsettled issue." *Askew*, 810 F.3d at 266 (citation and internal quotation marks omitted).

**C. Analysis**

The Court GRANTS Plaintiff's Motion for Summary Judgment and DENIES Travelers' Motion for Summary Judgment. There is no genuine dispute as to any material fact, and Plaintiff is entitled to judgment as a matter of law because the Policy unambiguously provides Virginia underinsured motorist coverage under the circumstances of this case. Because the Policy unambiguously provides Virginia coverage, and because the Policy would be construed against Travelers even if the Policy were ambiguous, Travelers is not entitled to judgment as a matter of law.

---

[2] Both parties appear to agree that District of Columbia law governs the interpretation of the Policy. (*See* Pl.'s Br. at 12, Dkt. No. 50; Def.'s Br. at 9 n.11, Dkt. No. 52.)

1. *Plaintiff is Entitled to Judgment as a Matter of Law Because the Policy Unambiguously Provides Virginia Coverage*

The issue is whether the Policy clearly and unambiguously provides underinsured motorist coverage up to the Virginia limit. This issue turns on whether the Policy establishes where the Truck qualifies as being "principally garaged."

Whether a contract is ambiguous is a question of law to be determined by the Court. *Dist. No. 1–Pac. Coast Dist. v. Travelers Cas. & Sur. Co.*, 782 A.2d 269, 274 (D.C. 2001) (citation omitted). On the one hand, "[a] contract is not ambiguous merely because the parties dispute its meaning" or could have drafted clearer terms. *Id.* (citations omitted). Similarly, a contract "is not ambiguous where the court can determine its meaning without any other guide than a knowledge of the simple facts on which, from the nature of language in general, its meaning depends." *Wash. Props., Inc. v. Chin, Inc.*, 760 A.2d 546, 548 (D.C. 2000) (citations and internal quotation marks omitted). When insurance contracts "are clear and unambiguous, they will be enforced by the courts as written, so long as they do not violate a statute or public policy." *Cameron v. USAA Prop. & Cas. Ins. Co.*, 733 A.2d 965, 968–69 (D.C. 1999) (citation and internal quotation marks omitted).

On the other hand, a contract is ambiguous when provisions in controversy are "reasonably or fairly susceptible of different constructions or interpretations[.]" *Wash. Props.*, 760 A.2d at 548 (citation and internal quotation marks omitted). "If there is more than one interpretation that a reasonable person could ascribe to the contract, while viewing the contract in context of the circumstances surrounding its making, the contract is ambiguous." *Gryce v. Lavine*, 675 A.2d 67, 69 (D.C. 1996).

Here, Plaintiff argues that the Policy clearly and unambiguously provides that the amount of underinsured coverage is determined by the state where the Truck is garaged while "covered"

6

under the Policy. (Pl.'s Br. at 13.) By contrast, Travelers argues that the relevant period is from the time when Penske put the Truck into service as a rental (June 2013) to the time of the accident (May 2014). (*See* Def.'s Opp'n at 1.) In the alternative, Travelers asserts that the evidence demonstrates the Truck was principally garaged in Maryland if analyzed over the full year the Policy was in effect. (*See id.*) Plaintiff contends that the location of the Truck during any period in which it was not being used as a temporary substitute vehicle, and therefore a "covered" auto under the Policy, is immaterial to what coverage applies. (*See* Pl.'s Br. at 11; Stip. ¶ 17.)

The Court holds that when the Policy refers to "where a covered 'auto' is principally garaged," the relevant time period is when the Truck was a "covered" auto. The parties do not dispute that the Truck was "covered" during the three-day period it served as a substitute for the vehicle being serviced, and that the Truck was not "covered" prior to the three-day rental period. The parties also do not dispute that WP Company garaged the Truck in Virginia during the three-day period. Therefore, the Truck was "principally garaged" in Virginia for purposes of the Policy.

If this Court were to adopt Travelers' reasoning, WP Company's parent company would have no basis to know what insurance it was buying. For example, if one of WP Company's vehicles undergoes maintenance and WP receives a substitute vehicle, under Travelers' reasoning, the applicable coverage for that substitute would be subject to wherever the vehicle happened to come from that day. According to Travelers' reasoning, today that state is Maryland, but tomorrow it could be Arizona. In other words, the title of the substitute vehicle would determine unknown limits of coverage, contrary to the insured's insurance contract.

Further, Travelers argues that a three-day period—the length of time that WP Company rented the Truck—is insufficient as a matter of law to establish where a vehicle is principally garaged. Travelers relies primarily on six nonbinding cases; none of them applies District of Columbia law, most of them analyze personal insurance in a single state rather than a commercial insurance policy across multiple states, and all of them are distinguishable.

*First*, the Maine federal court case applying Maine law analyzed "principally garaged" in the context of whether a state statute (rather than a contract) mandated compulsory coverage for personal (rather than commercial) insurance. *See Eddy v. Vanguard Car Rental USA, Inc.*, No. CIV. 09-313-P-S, 2010 WL 325934, at *7 (D. Me. Jan. 21, 2010), *aff'd*, No. CIV. 09-313-P-S, 2010 WL 716231 (D. Me. Feb. 24, 2010). *Second*, the Ohio state court case applying Pennsylvania law is distinguishable for the same reasons. *See Estate of Ralston v. Metro. Prop. & Cas. Ins. Co.*, 767 N.E.2d 789, 793–94 (Ohio Ct. App. 2001). *Third*, the New Jersey state court case applying New Jersey law addressed the applicability of a statute (rather than a contract) intended to protect the public (rather than a private party), and concluded it was "debatable" whether a five-week period would support a finding as to where a vehicle was principally garaged. *See State v. Arslanouk*, 400 A.2d 1206, 1207–08 (N.J. App. Div. 1979). *Fourth*, the Wisconsin state court case applying Iowa law involved unique circumstances decided on public policy grounds and concerned personal (rather than commercial) insurance. *See Handal v. Am. Farmers Mut. Cas. Co.*, 255 N.W.2d 903, 907–08 (Wis. 1977). *Fifth*, the Ninth Circuit case applying California law could *not* "say, as a matter of law," the vehicle was principally garaged in a state even if it "assumed" the vehicle was there for 15 days, and it appears the court analyzed only the period when the vehicle was covered under the policy. *See State Farm Mut. Auto. Ins. Co. v. Porter*, 186 F.2d 834, 844 (9th Cir. 1950). *Sixth*, the California

8

federal court case applying Michigan law was decided when there was "no evidence in the record" as to where the vehicle was "principally garaged," and the court analyzed a state statute (rather than a contract) mandating compulsive coverage for personal (rather than commercial) insurance. *See Frasca v. United States*, 702 F. Supp. 715, 718 (C.D. Ill. 1989).

Travelers also argues that even if a three-day period were sufficient to establish where the Truck was principally garaged, the Truck was not licensed or taxed in Virginia during that period. In Travelers' view, Virginia courts would therefore consider the Truck ineligible for Virginia underinsured motorist coverage. (*See* Def.'s Opp'n at 4 n.3; Def.'s Br. 11–12.) This argument is misplaced for two reasons. *First*, District of Columbia law applies here, not Virginia law. *Second*, the Policy coverage that WP Company's parent selected to protect its fleet applies here, unlike the cases upon which Travelers relies that analyze the compulsive coverage provided by statute.

In sum, the Truck was "principally garaged" in Virginia for purposes of the Policy. Thus, Plaintiff is entitled to underinsured coverage up to the limit applicable for Virginia. Because there is no genuine dispute as to any material fact and Plaintiff is entitled to judgment as a matter of law, the Court grants Plaintiff's Motion for Summary Judgment.

## 2. *Travelers Is Not Entitled to Judgment as a Matter of Law Because the Policy Provides Virginia Rather than Maryland Coverage*

The next issue is whether the Policy clearly and unambiguously provides underinsured motorist coverage up to the Maryland limit.

The parties do not dispute that the Truck was licensed in Maryland. It also appears that the parties stipulated that, if the relevant period is the one year between the time when Penske used the Truck as a rental to the time of the automobile accident, the Truck was principally garaged in Maryland. Therefore, if Plaintiff's use of the Truck does not qualify for Virginia underinsured

motorist coverage, the parties agree that Plaintiff's use of the Truck would qualify for Maryland coverage. However, for the reasons stated above, the Policy clearly and unambiguously provides Virginia coverage because that is where the Truck was principally garaged while it was covered under the Policy.

Moreover, Travelers would not be entitled to judgment as a matter of law even were the Policy ambiguous because, under those circumstances, the Court would construe the Policy against Travelers. Under District of Columbia law, ambiguities in an insurance contract are typically construed against the insurer. *See Cameron*, 733 A.2d at 968.

Travelers contends that other courts interpret "principally garaged" according to its ordinary meaning, and that it is "not a difficult concept" because it means where a vehicle is "kept most of the time." (Def.'s Br. 12–14.) However, an alternative reason why this Court rules in Plaintiff's favor is because insofar as the Policy is ambiguous, Travelers would not be entitled to judgment as a matter of law. A Nebraska Supreme Court case not cited by either party helps illustrate this point and states:

> Although the term "principally garaged" is not difficult to define, it is difficult to apply in a temporal context. To determine where a vehicle is kept most often, one must establish a defined period of time and then determine the place that the vehicle was located more often than any other place during that time period.

*Blair v. State Farm Ins. Co.*, 697 N.W.2d 266, 271–72 (Neb. 2005).

Here, if the Policy does not unambiguously provide Virginia coverage by looking to the period of time the Truck was a "covered" auto, the Policy would be ambiguous. It would be susceptible to more than one interpretation concerning the time period applicable for calculating where the Truck was principally garaged. The time period could begin (a) when Penske put the Truck into service, (b) when the Truck qualified as a "covered" auto, or (c) when the vehicle being serviced first qualified as a "covered" auto.

Because the Policy unambiguously provides Virginia coverage, and because Travelers would not be entitled to judgment as a matter of law even if the Policy were ambiguous, the Court denies Travelers' Motion for Summary Judgment.

### IV. CONCLUSION

The Court holds that Plaintiff is entitled to up to $2,000,000 in underinsured motorist coverage under the Policy's Virginia limit to the extent a third-party tortfeasor is deemed underinsured in the Ibrahimy Lawsuit. Accordingly, it is hereby

**ORDERED** that Plaintiff Robert Hall's Motion for Summary Judgment (Dkt. No. 47) is **GRANTED**; and it is further

**ORDERED** that Defendant Travelers Property Casualty Company of America's Motion for Summary Judgment (Dkt. No. 48) is **DENIED**.

**IT IS SO ORDERED.**

ENTERED this 27th day of September, 2016.

Alexandria, Virginia
9/27/2016

_____/s/_____
Gerald Bruce Lee
United States District Judge

11